**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 12, 2021[*]
Decided April 13, 2021

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-2564

| | |
|---|---|
| DAVID ROBERT BENTZ, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| | No. 3:15-CV-121-NJR-MAB |
| *v.* | |
| DONALD LINDENBERG, et al., <br> *Defendants-Appellees*. | Nancy J. Rosenstengel, <br> *Chief Judge*. |

**O R D E R**

David Bentz, an Illinois prisoner, asserts in this suit under 42 U.S.C. § 1983 that two correctional officers unlawfully attacked him in the medical unit and then denied him medical care for his injuries. With the assistance of recruited counsel, Bentz's case went to trial, and Bentz lost. He unsuccessfully moved the district court for a new trial, principally arguing that the defendants had wrongly withheld medical logs and video

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

evidence of the incident and then lied about that evidence. Because the court did not abuse its discretion in ruling that Bentz had not shown a discovery violation or perjury, we affirm.

We begin with the pretrial proceedings. Bentz requested but did not receive from the defendants two items: Sign-in logs from the medical unit (to identify witnesses) and surveillance recordings of the incident. The defendants did, however, produce an internal email stating that, in response to Bentz's grievance about the incident, "all available video footage was reviewed," and his allegations were "unsubstantiated." Bentz did not move to compel further production. After discovery, the court entered summary judgment for the defendants on the claims not at issue on appeal. The court then allowed Bentz to proceed to trial on his Eighth Amendment claims for unlawful force and deliberate indifference, for which the court *sua sponte* recruited counsel for him.

The trial consisted of testimony supporting and denying Bentz's allegations. According to Bentz, he was waiting for a medical appointment in August 2014 when Donald Lindenberg, a correctional officer, punched him and dragged him out of the medical unit by his throat, where Virgil Smith, another officer, joined the attack. Then they did not allow Bentz to receive prompt medical care for his injuries. For their part, Lindenberg and Smith denied that the attack occurred, adding that they had no recall of even interacting with Bentz at the medical unit. They also said that officers would face serious discipline for the behavior that Bentz alleged, and that security cameras in the hallway where Bentz said the attack occurred deterred it. They had not seen any video recordings, though, because prison regulations barred them from watching recordings about their own behavior. The jury returned verdicts for the defendants.

Proceeding pro se, Bentz moved for a new trial and sanctions on three grounds. First, he accused the officers of withholding the sign-in log to prevent him from identifying potential witnesses. Second, he faulted them for failing to produce video surveillance of the attack. He cited the internal email stating that prison officials had reviewed all "available" recordings. Although they said that none substantiated his claims, he believed that withholding any available videos warranted relief. Finally, he argued that the two officers had lied about the presence of misconduct-deterring security cameras in the vicinity of the attack. He relied on affidavits from three inmates swearing that no cameras operated in the hallway when the attack occurred.

The district court denied the motions. Bentz did not move to compel the sign-in logs or video recordings, it reasoned, so he forfeited a challenge to a failure to produce

them. In any event, Bentz could not show prejudice because even without the logs, he had identified a witness to testify on his behalf, and he did not rebut the defendant's assertion that video recordings no longer existed. Finally, the post-trial affidavits from the inmates about the lack of operating cameras did not show perjury, because Lindenberg and Smith could have genuinely believed that cameras were operational.

On appeal, Bentz first argues that the district court should have sanctioned the defendants for their failure to produce the sign-in log and video recordings. We review a district court's rulings about discovery for abuse of discretion. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755 F.3d 832, 837 (7th Cir. 2014). The court reasonably declined to sanction the defendants because, as it correctly observed, Bentz did not move to compel the production of these materials. As a result, the court never ordered their production, so the defendants never contemptuously disobeyed an order. *See Prod. Specialties Grp., Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 699 (7th Cir. 2008). And the court had no duty to compel the production of the sign-in log or video recording without a request from Bentz. *See Helping Hand Caregivers, Ltd. v. Darden Rests., Inc.*, 900 F.3d 884, 891 (7th Cir. 2018) ("[w]here the failure to secure discovery is due to a party's own lack of diligence, the district court can in its discretion hold the party to the consequences of its choice."). Finally, nothing in the record suggests that the defendants acted in bad faith, and without such evidence, the decision to deny sanctions was further appropriate. *Lewis v. McLean*, 941 F.3d 886, 892 (7th Cir. 2019).

Bentz next argues that the absence of a video recording of the incident required an instruction advising the jury to draw an adverse inference against Lindenberg and Smith for destroying that evidence. For evidence of spoliation, he relies on the email in which prison investigators confirmed that they reviewed all "available" recordings, none of which substantiated Bentz's claims. This argument has two fatal flaws. First, Bentz did not timely request an adverse-inference instruction, so that argument is waived. *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 403 (7th Cir. 2010). Second, Bentz provides no proof that Lindenberg and Smith destroyed any video evidence, let alone intentionally. To the contrary, they testified that they were not involved in the investigation of the incident or ever saw it. Without proof of their personal involvement in any destruction, no instruction was warranted. *See Bracey v. Grondin*, 712 F.3d 1012, 1018–19 (7th Cir. 2013) (affirming decision to decline an adverse-instruction request because plaintiff lacked evidence that defendants had destroyed video).

Bentz also renews his contention that the district court should have ordered a new trial. We review the denial of a request for a new trial for abuse of discretion. *Fields v. City of Chicago*, 981 F.3d 534, 552 (7th Cir. 2020). He raises two arguments, but neither persuades us that the court abused its discretion.

First, he maintains that the non-production of any logs and video recordings necessitated a new trial. But just as the district court reasonably ruled that Bentz's failure to move to compel their discovery justified a denial of sanctions, Bentz's failure also meant that the discovery omissions did not compel a new trial. *See Saathoff v. Davis*, 826 F.3d 925, 930 (7th Cir. 2016).

Second, Bentz argues that the defendants' "perjury" entitled him to a new trial. He insists that "new" evidence—affidavits from inmates stating that no security cameras worked in the hallway during the incident—shows that Lindenberg and Smith lied about their belief that security cameras monitored the area. This argument has multiple defects.

To begin, the evidence that Bentz wanted to use to prove perjury was reasonably available during trial, so it does not necessitate a new trial. *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Bentz knew that, during the defendants' case, they testified that they believed that cameras recorded events in the hallway, and he also knew that they had not produced any such recordings. If Bentz believed that they were lying about the presence of security cameras, then before the trial ended he had every reason to ask the district judge to allow him to present rebuttal testimony from the inmates who could testify about the absence of operational cameras. But Bentz does not even assert, let alone explain, that he was unable to proffer that testimony during trial.

In any event, Bentz cannot show the absence of this "new" testimony prejudiced him, as he must in order to receive a new trial. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 414 (7th Cir. 2015); *Whiting v. Westray*, 294 F.3d 943, 944 (7th Cir. 2002). The proposed testimony of the absence of working security cameras does not refute the testimony from Lindenberg and Smith that they believed that cameras in the hallway worked and deterred misconduct. For it is possible that no cameras were active in the hallway during the incident, but that the defendants did not know it then. The court thus reasonably ruled that any apparent inconsistency about security cameras did not prove perjury, establish prejudice to Bentz, or compel a new trial. *See United States v. Pierson*, 925 F.3d 913, 919 (7th Cir. 2019) ("[T]he error must have been prejudicial: It must have affected the outcome of the district court proceedings.") (internal citations omitted).

We have considered Bentz's remaining arguments, and none has merit.

AFFIRMED