In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1335

CARL ROBERTS,

*Plaintiff-Appellant*,

*v.*

BRIAN NEAL, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:11-cv-00266-JPG — **J. Phil Gilbert**, *Judge*.

SUBMITTED FEBRUARY 13, 2014 — DECIDED MARCH 11, 2014

Before POSNER, WILLIAMS, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff appeals from the dismissal of his pro se civil rights suit (see 42 U.S.C. § 1983) for failure to exhaust administrative remedies. Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). He is an Illinois prison inmate who had been transferred to the Pinckneyville Correctional Center from the Big Muddy Correctional Center. The defendants are employees of the two prisons—Davis, Doty, Neal, Selby, and Woodside are employed by Big Muddy,

and Alvis by Pinckneyville. The district court granted summary judgment in favor of all the defendants. We discuss the claim against Alvis first, then the claim against the Big Muddy defendants, including the separate grievance that Roberts claims to have filed against Davis.

While at Big Muddy, Roberts had broken his right hand in a fight with his cellmate, and he complains that he received inadequate treatment for the pain caused by the break. He says that he filed an "emergency" grievance (explained below) with Big Muddy's warden and received no response to it; the Big Muddy defendants claim there's no record of such a grievance.

It was several weeks after the injury that he was transferred to Pinckneyville. He says he told the receiving officer, defendant Alvis, that the staff at Big Muddy had authorized him to be assigned to the bottom bunk of the bed in his cell (it is difficult to climb into a top bunk with a broken hand), but that Alvis told him he'd have to work out his sleeping arrangements with his cellmate. He claims to have filed a grievance against Alvis, but Pinckneyville officials deny having received such a grievance.

The district court dismissed the claim against Alvis on the ground that there was no evidence besides Roberts's say-so that he had filed a grievance against him, and if he hadn't then he hadn't exhausted his administrative remedies and couldn't sue. Roberts provided no documentation to back up his claim, such as a copy of the grievance. But that was not an adequate basis for a grant of summary judgment. Roberts may have been lying about having filed a grievance—but alternatively the defendants may have been lying when they denied there was any record of such a grievance. A swearing

contest requires an evidentiary hearing to resolve, and none was held. It's true that while a trial is the standard means of resolving factual disputes, a judge can resolve an issue of exhaustion, like other threshold issues (such as jurisdiction), himself, in order to avoid multiple trials in the same case. But he can do that only after conducting an evidentiary hearing. *Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008).

On appeal, however, Roberts has forfeited his claim against Alvis by acknowledging that his grievance, though he says it was intended to embrace his mistreatment by Alvis, neither mentioned Alvis by name nor provided information that should have identified him to the grievance officer. That was a fatal defect, as we'll be noting with respect to another of Roberts's grievances.

His other claims concern employees of Big Muddy. He complained to a prison counselor at Pinckneyville about the lack of response to his Big Muddy grievance that named all but Davis, and was advised to refile the grievance with the Administrative Review Board. The Illinois prison system's grievance process, prescribed in 20 Ill. Admin. Code §§ 504.800 *et seq.*, typically begins at the prison level, with the filing of a grievance with a grievance officer. §§ 504.810–504.820. If the officer denies the grievance, and the warden affirms that denial, § 504.830(d), the prisoner can appeal to the Administrative Review Board, § 504.850(a), an entity within the Illinois Department of Corrections having statewide jurisdiction. §§ 504.800, 504.850(b)–(e). If, however, the grievance concerns events that took place at a prison other than the one in which the inmate is currently housed—as Roberts's refiled grievance did since he'd been shunted to Pinckneyville after his injury at Big Muddy—the inmate is

directed to skip the grievance officer and send his grievance directly to the Administrative Review Board. §§ 504.870(a)(3), (4). Roberts did that. But the Board ruled that his appeal was untimely, coming as it did 70 days after his hand injury and thus ten days too late; for section 504.810(a) provides that "a grievance shall be filed within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance." The district judge agreed, and so ruled that the Board had properly refused to accept Roberts's appeal and therefore Roberts hadn't exhausted his administrative remedies.

Roberts claims to have filed a separate grievance against one of the Big Muddy employees, nurse Davis. That claim was dismissed because, though she had mistreated him (he contends) at Big Muddy, Roberts had filed his grievance with a grievance officer at Pinckneyville; he should have filed it with the Administrative Review Board, as noted in the preceding paragraph. Dismissal on that ground was too abrupt, however, given the absence of any inquiry into what Roberts could reasonably be expected to know about the proper way to proceed against a prison employee in a different prison. It can't be assumed without some evidence that a prisoner is aware of section 504.870(a)(4), which required Roberts, so far as his claim against Davis (or anyone else at Big Muddy) was concerned, to bypass all grievance officers and go directly to the Administrative Review Board, even though ordinarily the grievance procedure begins, as prisoners must know, with a complaint to a grievance officer. We have searched for publicly available material explaining in terms intelligible to lay persons how to proceed in the situation in which Roberts found himself, and have not found any; nor is there any in the record. Although "when

administrative procedures are clearly laid out … an inmate must comply with them in order to exhaust his remedies," *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011), prisoners must "be informed of the grievance procedure at the admitting facility." § 504.810(d). Roberts filed his grievance against Davis at Pinckneyville, and, as we're about to see, it was likely to be interpreted as concerning mistreatment there rather than at Big Muddy, and in that event the grievance officer would not have told him to refile the grievance with the Administrative Review Board—and so far as we know did not tell him that.

The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target. It's not merely that Roberts didn't name her; a grievant is not required to know the name of the prison employee whom he's complaining about—often he will not know the employee's name—and so it is enough if he "include[s] as much descriptive information about the individual as possible," § 504.810(b). Roberts had failed to do this in his grievance against Alvis. He failed in spades to do so in the grievance that he now says was against Davis. For it states at the outset that it is intended "to express opposition [to] and disagreement" with a document issued by a doctor at Pinckneyville named Obadina. The Pinckneyville grievance officer would naturally have inferred that Roberts was complaining about the medical treatment he was receiving there. The grievance does go on to say that "the Big Muddy River doctor" had told Roberts that the "necessities" (namely pain medication and the lower bunk) would be provided at Pinckneyville and that they weren't. But the only suggestion that the doctor was at fault is Roberts's further statement that "I was told by the intake screening nurse

[i.e., at Pinckneyville] that my medical records she was re-
viewing showed nothing." This could mean that the Big
Muddy doctor had failed to convey the necessary informa-
tion to Pinckneyville. But the grievance is not against that
doctor, and anyway Davis is not a doctor. Roberts thus did
fail to exhaust his remedies against Davis, and so cannot sue
her.

Regarding his grievance against the other Big Muddy de-
fendants, affidavits from the custodians of grievance records
both at Big Muddy and at the Administrative Review Board
state that searches of the records revealed no timely griev-
ance by Roberts against the Big Muddy employees; in an-
other affidavit a member of the Board swore that she could
find no record of a timely grievance filed by him with the
Board. But remember that his claim is that he filed an *emer-
gency* grievance against the Big Muddy defendants after his
injury but before his transfer to Pinckneyville, and emer-
gency grievances are to be submitted directly to the warden
and allege "a substantial risk of imminent personal injury or
other serious or irreparable harm to the offender."
§ 504.840(a). Such grievances require expedited treatment
and entitle the grievant to a response by the warden "indi-
cating what action shall be or has been taken" on the griev-
ance. § 504.840(b). It is unclear whether Roberts's emergency
grievance, since it would bypass the grievance officers, was
in the records that the records custodian searched; and as-
suming it was filed, Roberts never received a response from
the warden, and so didn't have to do anything further to
keep his grievance alive. See *Lewis v. Washington*, 300 F.3d
829, 833 (7th Cir. 2002); cf. § 504.850(a). That his subsequent
grievance filed with the Administrative Review Board was
untimely is therefore irrelevant. And so he didn't fail to ex-

haust his administrative remedies. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005).

This is on the assumption, however, that he did file the emergency grievance. The magistrate judge, whose recommendations the district judge accepted, indulged that assumption. The case was before him on the defendants' motion for summary judgment, and so there hadn't been an evidentiary hearing. If the defendants want to contest the issue whether the grievance was filed, this will require such a hearing in the district court, just as the question whether Roberts filed a grievance against Alvis would have required an evidentiary hearing to answer had Roberts not forfeited the issue in this court.

The judgment of the district court is affirmed with regard to Alvis and Davis but reversed with regard to the other defendants, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.