NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 25, 2021[*]
Decided August 31, 2021

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 20-2428

|  |  |
|---|---|
| MICHAEL FENCEL, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 19-cv-316-SMY |
| RYAN CROSS, *Defendant-Appellee.* | Staci M. Yandle, *Judge.* |

**O R D E R**

Michael Fencel sued staff at the Menard Correctional Center (where he was formerly imprisoned) under 42 U.S.C. § 1983 for failing to protect him from his cellmate. Having dismissed the claims against most defendants, the district judge later entered summary judgment for the correctional officer who remained, concluding that

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Fencel did not exhaust his administrative remedies. We agree with that ruling and affirm.

The facts pertaining to the exhaustion issue are undisputed, and we recount the underlying facts, some of which the defendants denied in their answer, in the light most favorable to Fencel. *See Reid v. Balota*, 962 F.3d 325, 327 (7th Cir. 2020). In early November 2017, Fencel slipped a note to Ryan Cross, a correctional officer, requesting to change cells because his cellmate was asking him personal and sexual questions. Fencel did not receive a response from Cross, but his cellmate somehow learned of the note. As retaliation the cellmate beat and raped him. Later, Fencel alleges, the cellmate raped him another three times. Three weeks later Fencel sent a letter to the prison's warden pleading for help because his cellmate had raped him, which prompted an immediate investigation.

Fencel then filed an emergency grievance on December 9, 2017. In it he explained that after he gave the note to Cross, Cross failed to act, and his cellmate assaulted him. He asked for "permanent one-man cell status."

In the meantime the investigation prompted by Fencel's letter to the warden proceeded, and Fencel was placed in protective custody. The warden therefore responded to the December 9 grievance by indicating that it was no longer an emergency and directing Fencel to "submit th[e] grievance in the normal manner." That process requires inmates to first file a complaint with a grievance officer. ILL. ADMIN. CODE tit. 20, § 504.810(a). Fencel did not do so.

The rape investigation yielded the conclusion that on at least two occasions, Fencel had consensual sex with his cellmate. So he received a conduct report. A hearing officer found him guilty of violating prison rules and recommended six months of segregation.

Fencel filed another two grievances in early January 2018. In the first, he challenged the disciplinary finding that he had consensual sex. The next day in a second grievance, he asked to dismiss the disciplinary ticket because, he alleged, prison staff knew his cellmate was a predator and negligently placed him in the same cell. In both grievances he sought "one man status" or a transfer out of Menard. A grievance officer recommended denying the request to overturn the hearing officer's finding and dismissing the second grievance as moot because prison officials had already investigated the alleged sexual misconduct. The warden concurred, and Fencel appealed both decisions without success.

Turning next to federal court, Fencel sued prison staff for failing to protect him from the sexual assault by his cellmate. The district judge screened the complaint, 28 U.S.C. § 1915A, and dismissed it with respect to all defendants except Cross. She later entered summary judgment for Cross, concluding that Fencel had failed to exhaust the prison's administrative remedies. 42 U.S.C. § 1997e(a). Only Fencel's grievance in December 2017, the judge explained, alleged wrongdoing by Cross. But Fencel did not resubmit that grievance, as required by Illinois law, after the warden deemed it a nonemergency. *See* ILL. ADMIN. CODE tit. 20, § 504.840(c). Fencel's two grievances in January 2018 did not identify Cross. *See id.* § 504.810(c). Finally, neither Fencel's note to Cross nor his letter to the warden could count as a grievance because Fencel did not use the correct form or submission procedure. *See id.* § 504.810(a), (c).

On appeal Fencel insists that his grievances were sufficient to exhaust his administrative remedies with respect to a failure-to-protect claim against Cross. We review the judge's contrary ruling de novo. *See Reid*, 962 F.3d at 329.

Concerning the December 2017 emergency grievance, Fencel first argues that because he was placed in protective custody (followed by segregation) before the warden responded, he received the relief that he had requested and did not need to resubmit his grievance. But if a prison can take some action in response to a grievance—even if not the specific relief requested—a remedy is available under § 1997e(a). *Booth v. Churner*, 532 U.S. 731, 740–41 (2001); *Dole v. Chandler*, 438 F.3d 804, 808–09 (7th Cir. 2006). Here, even though Fencel requested "one-man cell status," the administrative process could have led to other relief, including disciplining the officers involved or exposing factual disputes. *See, e.g.*, *Pozo v. McCaughtry*, 286 F.3d 1022, 1023–24 (7th Cir. 2002).

To properly exhaust administrative remedies under the Prison Litigation Reform Act, Fencel needed to comply with state law. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Illinois Administrative Code specifies that when a chief administrative officer (here, the warden) concludes that a grievance does not state an emergency, the officer must notify the inmate that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." § 504.840(c); *see also Williams v. Wexford Health Sources, Inc.*, 957 F.3d 828, 832 (7th Cir. 2020). Although he was notified, Fencel did not refile.

Fencel responds that resubmitting the December 2017 grievance was not required because Illinois law states only that an inmate "may" file the grievance through the normal procedures. § 504.840(c). But the law would not *require* the resubmission of a grievance; an inmate is free to abandon his complaint. The point is

that there was a process available, which he had to use before suing in federal court. *See* § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Fencel next contends that he exhausted his claim against Cross through his two grievances in January 2018, for which he followed the appropriate procedures. But these grievances did not mention Cross, and the Code requires inmates to explain "the name of each person who is … involved in the complaint" or if the names are not known, "as much descriptive information" as possible. § 504.810(c); *see Roberts v. Neal*, 745 F.3d 232, 235–36 (7th Cir. 2014) (failing to identify the target of a grievance is fatal under Illinois law). Fencel not only neglected to mention Cross, he also provided no details to identify him or even a description of the events in which Cross was personally involved. And Fencel knew Cross's identity; his emergency grievance, filed just three weeks earlier, had named Cross and described the incident in which his cellmate assaulted him after Cross did not respond to his note.

The remaining arguments are mentioned only in Fencel's reply brief. He asserts that the judge erred by concluding that his note to Cross and letter to the warden did not satisfy the grievance process, dismissing the other defendants at screening, and denying his requests to recruit counsel. Arguments not raised in the opening brief are waived and so too are underdeveloped arguments. *See Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). Here, Fencel only vaguely contends that the letter satisfies the grievance process. That—like his one-sentence request that we review the screening order "de novo" and statement that he filed several requests for counsel—does not entitle him to our review of the merits.

AFFIRMED